## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

**JARELL D. TERRY**                                          **PLAINTIFF**
**ADC #149998**

**v.**                          **No: 2:21-cv-00056 LPR-PSH**

**MORIENO KELLY**                                          **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Jarell Terry, an inmate at the Arkansas Division of Correction's East Arkansas Regional Unit, filed a *pro se* civil rights complaint on May 17, 2021 (Doc. No. 2), and an amended complaint on June 28, 2021 (Doc. No. 8). After screening Terry's amended complaint, his claims were limited to individual capacity claims against Defendants Sergeant Morieno Kelly and Assistant Warden Emmer Branch

based on his allegations that Kelly sprayed him in the face with chemical agents on May 29, 2019, and that Branch failed to intervene.  *See* Doc. Nos. 13 & 38.  His claims against Branch were dismissed for failure to exhaust administrative remedies. *See* Doc. No. 61.

Kelly filed a motion for summary judgment, a brief in support, and a statement of facts asserting that he is entitled to judgment as a matter of law on the merits of Terry's claims (Doc. Nos. 94-96).   Terry filed several responsive pleadings, including a response to Kelly's statement of facts (Doc. Nos. 114-115).   For the reasons set forth in this Recommendation, the undersigned recommends that Kelly's motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations

must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment.  The Court stated, "[i]f 'opposing parties tell two different stories,' the

court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.  Facts

On May 29, 2019, Plaintiff Terry was sprayed with three bursts of MK-9 chemical agent by Defendant Lieutenant Morieno Kelly at the ADC's East Arkansas Regional Unit.  *Declaration of Morieno Kelly ("Kelly Declaration") & Incident Report Summary* (Doc. No. 94-1); *Terry's Responses to Defendants Statement of Material Undisputed Facts* ("*Terry's Disputed Facts*") (Doc. No. 115).  Kelly went to Terry's cell on that day because he had received a call from Corporal K. Wilson notifying him that Terry was suicidal.[1]  *Kelly Declaration* at ¶ 2.  Kelly explained in his declaration that his objective was to relocate Terry from his cell and to an area where Terry could be more closely monitored.  *Id.*  He further explained that inmates who are believed to be suicidal are required to strip off their clothes and are given a paper gown so that they cannot use clothing to hurt themselves.  *Id.*  Kelly maintains

---

[1] In his deposition, Terry testified that he had asked to speak to mental health, and "they said I was suicidal." *Deposition Testimony of Jarrell D. Terry* (Doc. No. 94-4) at 37.

he administered chemical spray because Terry refused his repeated requests to submit to restraints so that he could be relocated. *Id.*

The incident was recorded on a handheld video, which has been submitted to the Court under seal (Doc. No. 93).[2]  Kelly states in his declaration that the video accurately reflects the May 29, 2019 chemical spray incident with Terry. *Kelly Declaration* at ¶ 3.  Terry agrees. *Terry's Disputed Facts* at ¶ 3.

The video footage shows Kelly at Terry's cell giving Terry his "first direct order to turn around and submit to restraints." *Video* (MVI_0213.MP4) at 00:00 – 00:09.  The door to Terry's barred cell has a rectangular opening at waist-level through which a meal tray can be passed; an inmate's hands can also be placed through this opening so that they may be handcuffed. After Kelly directed to submit to restraints, Terry did not turn around or attempt to place his hands through the opening in his door. *Id.*  Kelly then gave Terry second and third direct orders to submit to restraints, warning Terry that chemical agents would be used against him if he did not comply. *Id.* at 00:15 – 00:24.  Terry argued with him, did not turn around, and did not place his hands through the opening. *Id.*  At that time, Kelly administered a short burst of chemical spray in Terry's face. *Id.* at 00:25.  After he

---

[2] Three videos files were submitted.  The ones labeled 36_190529091000_1000.n3r and 36_190529092000_0600.n3r show the hallway outside Terry's cell during the incident in question.  The one labeled MVI_0213.MP4 is the handheld video of the pepper spray incident.

was sprayed, Terry briefly backed up to the cell door, holding his hands near, but not through the opening for two to three seconds.  *Id.* at 00:29 – 00:31.  It is unclear whether Terry's hands were close enough to the opening for an officer to reach them. In any event, Kelly does not appear to be close enough to the cell door to handcuff Terry during those two to three seconds.  Kelly continued to instruct Terry many times to "put your arms through the bars and submit to restraints."  *Id.* at 00:42 – 00:54.  Terry still refused to turn around and put his hands through the opening.  At one point, he stuck his arms through the bars (but not through the opening) while facing forward; had he been handcuffed then, he would have been attached to the cell door.  *Id.* at 00:53 – 00:59.  Kelly repeatedly told Terry to turn around and submit to restraints while Terry continued to face his cell door, jumping up and down, and claiming he needed help.  *Id.* at 01:00 – 01:28.  Kelly again warned Terry that a chemical agent would be used against him if he did not comply.  *Id.* at 01:24 – 01:25. Terry again did not comply.  Instead, he removed his boxer shorts, yelling and coughing.  *Id.* at 01:26 – 01:32.  Kelly then sprayed Terry a second time.  *Id.* at 01:40.  Terry did not back up to the cell doors or place his hands through the opening to be handcuffed.  *Id.* at 01:41 – 02:05.  He knelt for a few seconds and continued yelling and coughing.  *Id.* at 02:06 – 02:16.  Terry next stood back up, and Kelly stated, "Inmate Terry, I need you to turn around and come to the bars and submit to restraints."  *Id.* at 02:18 – 02:24.  Terry did not comply but instead continued talking

and yelling, while Kelly told him again to turn around and submit to restraints.  *Id.* at 02:25 – 02:49.  Kelly warned him again that a chemical agent would be used against him if he did not turn around and submit to restraints.  *Id.* at 02:50.  Terry did not turn around.  *Id.* at 02:51 – 03:01.  Kelly sprayed him a third time.  *Id.* at 03:02.  He still did not turn around or back up to the cell doors while Kelly continued to instruct him to back up to the bars to submit to restraints.  *Id.* at 03:03 – 03:50.  Other officers arrived and attempted to reach Terry's arms, and Kelly continued to tell Terry to turn around and submit to restraints.  *Id.* at 3:51 – 04:26. The video does not show Terry finally being handcuffed.   The hallway video labeled 36_190529092000_0600.n3r shows a handcuffed Terry escorted out of his cell by two officers at 09:24:41.   Terry testified that the officers escorting him were Sergeants Norment and Franklin.  *Deposition Testimony of Jarrell D. Terry ("Terry Deposition")* (Doc. No. 94-4) at 21-22.

In his deposition, Terry testified that he did not remember hearing Kelly give him three direct orders to turn around and submit to restraints before he was sprayed the first time.  *Terry Deposition* at 37.  Terry stated:

> Well, I wouldn't say I didn't hear him, but I didn't remember it vividly that day as far as the whole incident together.  That day it happened, that's why I had to see the actual camera footage because the day it happened, like I say, I was mentally disturbed and I didn't remember the whole incident.

*Id.* He acknowledged he did not comply with Kelly's orders. *Id.* Terry claimed that Kelly never made an attempt to handcuff him, even when he briefly held his hands behind him near the opening for approximately three seconds. *Id.* at 39-44. Terry claims that once he was sprayed, he could not tell where he was in his cell in order to comply with Kelly's orders. *Id.* at 46. While it is difficult to understand Terry's words in the video, there is no indication he complained that he was unable to tell where he was or that he attempted to back up to the opening in the door to be handcuffed, apart from those three seconds after Kelly first sprayed him.

Terry also testified that after he was escorted to the shower, an unknown officer forcefully pushed him into the shower; he acknowledged that he had no knowledge of the name of the officer who pushed him.[3] *Terry Deposition* at 23. He claimed that he hit his head on the ground and lost consciousness. *Id.* He stated he suffered from scraped knees and headaches, but attempted to treat those himself. *Id.* at 24. Terry admitted he had no permanent or ongoing physical injury as a result of this incident other than scars on his knees. *Id.* at 65.

---

[3] Video footage of Terry being placed in the shower was not produced. Terry complains that the loss of this video footage "may well trigger a spoliation instruction." Doc. No. 114 at 4. Terry prematurely moved for sanctions regarding the loss of this video, *see* Doc. No. 66, but he did not subsequently move for sanctions alleging bad faith on the part of the defendant in the loss of the video. *See Sherman v. Rinchem Co.*, 687 F.3d 996 (8th Cir. 2012) (a spoliation instruction requires a finding that the party intentionally destroyed relevant evidence in bad faith).

Shelly Byers, the ADC's Assistant Medical Services Manager and custodian of inmate medical records, provided a declaration and attached a copy of Terry's electronic medical record for May 29, 2019. *Declaration of Shelly Byers* (Doc. No. 94-3). This record notes that "Patient was pepper sprayed" and reflects that he had "no complaints," "has been decontaminated in the shower and refused all vitals & medical attention," and was "[r]eleased to security sick call prn" [as needed]. *Id.* at 3. Terry disputes that he refused medical treatment. *Terry's Disputed Facts* at ¶ 17.

ADC Director Dexter Payne provided a declaration describing the ADC's Internal Affairs Division and its investigation into Kelly's use of force on Terry on May 29, 2019. *Declaration of Dexter Payne* (Doc. No. 94-2). Kelly was exonerated and his use of force found "within policy."[4] *Id.* at 2, 13-17.

## IV. Analysis

Kelly asserts that he is entitled to qualified immunity with respect to Terry's excessive force claim. Qualified immunity protects government officials from

---

[4] Terry submitted a copy of an ADC policy governing the use of chemical agents. Doc. No. 115 at 8-9. It provides, in relevant part:

It shall be the policy of the Department of Correction to ensure that the use of chemical agents and other non-lethal weapons against an inmate be undertaken with a minimum amount of force. Only when the inmate threatens bodily harm to himself/herself, other inmates, or individuals, will not produce an item(s), **or will not relocate,** may chemical agents or other non-lethal weapons issued by the Department be employed.

Code Ark. R. 004.00.2-410 (emphasis added).

liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The unnecessary and wanton infliction of pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. "Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7). *See also Whitley v. Albers*, 475 U.S. 312, 322 (1986)

(holding that, in an excessive force case, there must be "a reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of force or the existence of arguably superior alternatives").  Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate.  *Jones v. Shields*, 207 F.3d at 495.  Unless "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.'"  *Johnson v. Bi-State Justice Ctr./Arkansas Dep't of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993) (*citing Whitley,* 475 U.S. at 322).

A plaintiff need not allege significant injuries to state an excessive force claim.[5]  However, the extent of a plaintiff's injuries may constitute evidence of the amount and type of force used, and a greater than *de minimis* use of force is required. "Even where the force is unjustified, 'not every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is

---

[5] *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178-79 (2010) (abrogating the *de minimis injury* rule in excessive force cases, and clarifying that the extent of the injury is only one factor to be considered when resolving the "core judicial injury" of "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"); *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (holding that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of the force applied, is not in and of itself a threshold requirement for proving" an excessive force claim).

'repugnant to the conscience of mankind,' does." *Burt v. Nurse R.N.,* No. 4:19-CV-00040-SMR-CFB, 2019 WL 8752341, at *2 (S.D. Iowa Mar. 27, 2019) (citing *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)).

The limited use of mace or chemical spray to control a recalcitrant inmate has been held not to constitute excessive force. *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (finding a limited application of chemical spray a "tempered response" to control a recalcitrant inmate who had refused and questioned a direct order from his supervisor and refused to return to his barracks); *Treats v. Morgan,* 308 F.3d 868, 873 (8th Cir. 2002) ("The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary, or malicious.").[6]  In *Burns v. Eaton*, the Eighth Circuit Court of Appeals affirmed a grant of summary judgment in favor of an officer where the prisoner-plaintiff was warned that he would be pepper sprayed if he did not "catch the cuffs" so he could be returned to his cell from a shower cell.  752 F.3d 1136, 1138-1140 (8th Cir. 2014).  The prisoner did not comply but instead threw objects and spit at the officer, and the officer

---

[6] In *Jones*, the Eighth Circuit distinguished its cases finding the use of chemical spray punitive or arbitrary, stating "the few cases where we denied summary judgment in Eighth Amendment excessive force claims based on pepper spraying have involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force."  752 F.3d at 1140 (citing *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008); *Treats v. Morgan, supra;* and *Lawrence v. Bowersox,* 297 F.3d 727, 730, 732 (8th Cir. 2002)).

sprayed him with a small amount of pepper spray after "each aggressive act of defiance." *Id.* at 1138. The Court rejected the prisoner's argument that the force was excessive because he was locked in a shower cell and posed no threat to the officer, explaining:

> At that point, [officer] Eaton no longer faced the relatively simple task of cuffing [prisoner] Burns and escorting him back to his cell. Eaton now faced a recalcitrant inmate. He could not simply leave Burns in the Isolation Unit shower cell, where he did not belong. Either Burns must be persuaded to comply with the command to return to his cell, or someone must enter the shower cell and forcibly remove him. Thus, Burns's contention that he posed no threat because he was alone in a locked cell ignores the reality of what was required "to maintain or restore discipline" in this situation.

*Id*. at 1139. The Court further noted that there was no evidence of a "malicious motive to harm," or "evidence that the force used was so greatly in excess of that needed to restore and maintain order." *Id.* at 1140.

The Court has carefully reviewed the video recordings of the May 29 incident. It is undisputed that Kelly sprayed Terry three times on May 29, 2019, when he attempted to relocate Terry to a different cell. It is undisputed that Kelly gave clear and simple instructions to Terry numerous times. It is undisputed that Kelly warned Terry he was going to spray Terry before doing so. In response, Terry simply would not comply, instead talking and yelling. Kelly could not leave Terry in his cell because he was responsible for relocating him to a cell where he could be watched.

Kelly understood Terry was on suicide watch.  Terry disputes that he refused to comply with Kelly's instructions.

As stated above, if opposing parties tell two different stories, as is the case here, the Court is required to view genuinely disputed material facts in a light most favorable to the nonmoving party, **as long as** those facts are not so blatantly contradicted by the record that no reasonable jury could believe them.  The Court finds that the facts alleged by Terry are so blatantly contradicted by the record that no reasonable jury could believe them. The Court is therefore not required to view the facts in a light most favorable to Terry, and declines to adopt his version of the facts for purposes of ruling on this motion. *See Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017).  In these circumstances, Kelly's use of chemical spray did not constitute excessive force but instead constituted a good faith effort to maintain or restore discipline.  And because there was no constitutional violation, Kelly is entitled to qualified immunity on Terry's excessive force claim as it relates to the use of chemical spray.

Kelly is also entitled to qualified immunity on Terry's claim that Kelly shoved him in the shower after the use of chemical spray.  Terry acknowledged in his deposition testimony that he did not know if Kelly was the person who shoved him. (Terry also admitted in his deposition testimony that he does not even clearly remember the May 29 incident.)  In his responsive pleadings, he argues that Kelly

should be held responsible simply because he was there and did not intervene. To succeed on a failure-to-protect claim, Terry must show that there was a substantial risk of serious harm to him and that Terry was deliberately indifferent to that risk. *See Irving v. Dormire,* 519 F.3d 441, 447 (8th Cir. 2008). Terry has not come forward with any evidence that Kelly was aware another ADC employee was going to push Terry into the shower or would have even had an opportunity to intervene. In sum, Terry has come forward with no evidence to support his claim that Kelly failed to protect him from excessive force when pushed in the shower, and accordingly, Kelly is entitled to qualified immunity on that claim.

## V.  Conclusion

Kelly's motion for summary judgment (Doc. No. 94) should be granted. Judgment should be awarded in favor of Kelly.

IT IS SO RECOMMENDED this 16th day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE